# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

BellSouth Telecommunication LLC       Civil Action No. 6:16-cv-001624

versus                                Unassigned District Judge

Calls Plus Inc                        Magistrate Judge Carol B. Whitehurst

## REPORT AND RECOMMENDATION

Before the Court is a Motion To Dismiss Complaint In Intervention Under FRCP 12(b)(1) and 12(B)(6), filed by Plaintiff BellSouth Telecommunications, LLC dba AT&T Louisiana ("AT&T") [Rec. Doc. 51], a Memorandum In Opposition filed by Intervenor Plaintiffs, Barbara Lamont and Ludwig Gelobter (collectively, "Intervenors") [Rec. Doc. 59] and AT&T's Reply thereto [Rec. Doc. 63]. For the reasons that follow, the Court recommends that the motion be granted.

## I. Background

BellSouth Telecommunications, LLC dba AT&T Louisiana ("AT&T"), a Georgia limited liability company with its principal place of business in Atlanta, Georgia, is a common carrier under the Communications Act of 1934, 47 U.S.C. § 201 *et seq* ("Communications Act") ("AT&T"). *R. 59.* New Orleans Transport Inc. dba Calls Plus ("Calls Plus"), a Louisiana corporation with its principal place of business in Lafayette, Louisiana, provides telephone answering services and telephone-based support and services to various customers around the United States. *R. 1.* Calls Plus is

owned by Intervenors.

AT&T's Complaint, *R.1*, states the following. On  or  about July 23, 2010, AT&T and Calls Plus entered into a  contract ("PRI Agreement")  for, among  other things,  certain Primary Rate ISDN[1] services (the "PRI Services").  In connection with the  PRI Services, AT&T billed  Calls Plus  for  the  PRI Services  under the "PRI Account." *R. 1, Exh. I.* On or about June 26, 2014, the PRI Agreement expired by its terms, and, thereafter, the PRI Services were billed at the rates set forth by the AT&T Tariffs applicable to the PRI Services provided and the location thereof (Louisiana).[2]

From approximately November  26, 2013,  and  continuing  through  January 26, 2015, Calls Plus  continued  to  make  partial  payments  on  the  PRI  Account  for the  PRI  Services. Beginning on or about February 2015, and at all times thereafter, Calls Plus failed to pay the amounts due and owing under the PRI Account whether incurred under the PRI Agreement or the Tariffs. As of the date of the instant motion, Calls Plus owes AT&T a total of $147,977.34 under  the  PRI Account, including  late

---

[1] IDSN stands for Integrated Services Digital Network. IDSN integrates speech and data to be transmitted over a line, including telephone lines.
*https://www.techopedia.com/definition/5370/integrated-services-digital-network-isdn*

[2] Pursuant to 47 U.S.C. § 151 *et seq*, AT&T filed tariffs with the Federal Communications Commission (the "FCC"), which requires that Plaintiff set forth the charges imposed by Plaintiff for interstate services as well as all "classifications, practices and regulations affecting such charges." *See also* 47 U.S.C. Section 203(a). Defendant was billed under the PRI Account at the rates in accordance with, but not limited to, AT&T Tariff F.C.C. No. 1  and  the General Subscriber Services Tariff for the State of Louisiana (together, the "Tariffs").

fees. AT&T demanded payment for the PRI Services provided to Calls Plus under the PRI Account, to no avail. AT&T also alleges that Calls Plus is responsible for the costs, including attorneys' fees, as specifically provided in the PRI Agreement.[3]

AT&T further contends that on or about August 26, 2009, AT&T and Calls Plus entered into a written agreement for certain telecommunication services entitled Master Agreement (the "Master Agreement"). The Master Agreement provides that "[T]his Master Agreement will apply to all services and equipment Customer buys from AT&T, now and in the future, that are provided under Pricing Schedules attached to or referencing this Master Agreement...." *Id., ¶ 13, Exh. 2.*

Under the terms of the Master Agreement, Calls Plus agreed to satisfy a "Minimum Annual Revenue Commitment" ("MARC"). At the end of each 12 consecutive month period, if Calls Plus failed to satisfy the MARC for that 12-month period, it was invoiced a shortfall charge in an amount equal to the difference between the MARC and the total of the applicable charges incurred during the 12-month period. In connection with the Master Agreement, Calls Plus agreed to a pricing schedule contract for certain Business Network Services ("ABN Agreement") *Id., ¶ 15, Exh.3.* The ABN Agreement provides a MARC for Calls Plus in the amount of $20,000.00 for each year of the three year term of the ABN Agreement.

---

[3] The PRI Agreement provides "Customer shall reimburse AT&T for all costs associated with collecting delinquent or dishonored payments, including reasonable attorney's fees. *Id., ¶ 12.*

AT&T alleges Calls Plus failed to meet the MARC for 2012, the last year of the MARC Commitment term. Therefore, AT&T assessed a shortfall charge to Calls Plus in the amount of $20,000.00. Calls Plus failed to pay the shortfall assessment despite AT&T's demand for payment which, at the time of filing the Complaint, was a total amount of $20,311.02. AT&T also alleges Calls Plus is responsible for the debt as the Master Agreement provides, "Customer shall reimburse AT&T for all costs associated with collecting delinquent or dishonored payments, including reasonable attorney's fees." *Id., ¶ 22.*

On or about November 22, 2016, AT&T filed suit against Calls Plus for (1) Breach of Contract, (2) Breach of Tariff, (3) Open Book Account, (4) Account Stated and (5) Quantum Meruit for each of the two Agreements—the PRI Agreement and the ABN Account. *R. 1.* On or about, March 7, 2017, Call Plus filed its Answer to the Complaint, which included a counterclaim against AT&T for breach of contract and unjust and unreasonable charges and practices by a common carrier in violation of 45 U.S.C. §201(b). *R. 9.* On August 16, 2017, Barbara Lamont and Ludwig Gelobter filed a Motion to Intervene. The Motion to Intervene was granted by this Court on October 30, 2017, under FRCP 24. *R. 43, 44.*

## II. Contentions of the Parties

In its motion, AT&T initially asserts that the Intervenors do not have Article III standing to bring their claims in this Court based on the alleged injury sustained or

wrong done to the corporation, Calls Plus, in which they are the shareholders and officers. AT&T also asserts, presumably in the alternative, that the Intervenors claims should be dismissed because: (1) Intervenors may not recover damages from AT&T for mental anguish caused by another's injury or suffering; (2) Intervenors cannot recover *presumed* damages for emotional distress or mental anguish arising from alleged violations under the Telecommunications Act; (3) the Telecommunications Act does not provide a statutory right to intervene and no jurisprudence exists to show otherwise; (4) Intervenors do not have legally protected interests in the Agreements at issue in this action; (5) Intervenors' claims for mental anguish/emotional distress depart from those of the main action; and (6) Intervenors' claims are barred by "The Economic Loss Doctrine."

In opposition, Intervenors argue they have requisite standing to assert claims for damages because their claims are the same as the injuries claimed by the corporation, Calls Plus. Intervenors further argue they have stated a cause of action under the Communications Act and their damages are not "presumed" but rather "are compensable." They contend that "the law-of-the-case doctrine" prohibits AT&T's arguments regarding intervention under Rule 24. Finally, they argue that the Economic Loss Doctrine does not bar their claims under the Communications Act.

The Court will first consider AT&T's 12(b)(1) motion for lack of standing. Thereafter, the Court will consider ST&T's 12(b)(6) motion.

### III. Law And Analysis

#### A. Motion To Dismiss For Lack of Standing Under Rule 12(b)(1)

##### 1. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012). In order to "prevent a court without jurisdiction from prematurely dismissing a case with prejudice," a court should consider a Rule 12(b)(1) motion for lack of subject-matter jurisdiction before addressing any motions that concern the merits of a case. *Id.* at 286–87. A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *Benton v. United States,* 960 F.2d 19, 21 (5th Cir. 1992).

"To establish standing, a plaintiff must prove that (1) he has sustained an 'injury in fact' that is both (a) 'concrete and particularized' and (b) 'actual or imminent, not conjectural or hypothetical,' (2) there is 'a causal connection between the injury and the conduct complained of,' and (3) a favorable decision is likely to redress the injury." *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 454 (5th Cir. 2017). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record. See *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir.1986). Uncontroverted allegations

6

of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.2001).

"The injury-in-fact element requires that a plaintiff show that he or she 'has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical.' " *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 542 (5th Cir. 2008)). "An allegation of future injury may suffice if the threatened injury is certainly impending or there is a substantial risk that the harm will occur." *Planned Parenthood*, 862 F.3d at 454.

### 2. Whether or Not Intervenors Have Standing

Intervenors are the owners and chief managers of CallsPlus who contend they have suffered personal damages in the form of "mental anguish" and "severe stress" caused by the "unjust, unfair, and unlawful" charges and practices imposed by AT&T. *R. 23*. The Constitution requires that prospective Intervenors have Article III standing to litigate their claims in federal court. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs (TOC),* 528 U.S. 167, 180 (2000)(stating that courts have an obligation to assure that plaintiff has Article III standing at the outset of the litigation). In general, corporations exist separately and distinctly from their respective shareholders. *New Castle Siding Co. v. Wolfson*, 97 A.D. 2d 501 (1983). "The law is clear that only a corporation and not its shareholders, not even a sole shareholder, have standing to

7

complain of an injury sustained by, or a wrong done to, the corporation." *United States v. Palmer*, 578 F.2d 144, 145-146 (5th Cir.1978) (citing *Mendenhall v. Fleming Co.*, 504 F.2d 879, 881 (5th Cir.1974) (Holding that plaintiffs who created corporation had no standing to recover personally for damages because the damages sought were direct damage to the corporate worth and "the right of recovery was the entity's right alone."). This rule is premised on the theory that shareholders accept the risk of loss from third party wrongdoing in proportion to the  amount of shares he or she holds, and likewise should benefit when the corporate entity wins an action. *Cunningham v. Kartridg Pak Co.*, 332 N.W.2d 881, 885 (Iowa,1983).

"There exists, however, a well recognized exception to this general rule. Where the act complained of creates not only a cause of action in favor of the corporation but also creates a cause of action in favor of the stockholder, as an individual, for violation of a duty owing directly to him, the stockholder may bring suit as an individual." *Empire Life Ins. Co. of America v. Valdak Corp.*, 468 F.2d 330, 335 (5th Cir. 1972); *see also North v. Wick*, 104 Ohio App. 332, 334(1957). Courts have interpreted this exception to mean either that the injury arose out of a special duty owed directly to the shareholders, *see, e.g.,Empire Life Insurance*, 468 F. 2d at 335, or the injury was separate and distinct from that suffered by the other shareholders, *see, e.g.Buschmann. Professional Men's Ass'n*, 405 F.2d 659, 662-63 (7th Cir. 1969). *See also,* 12B William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5911

(2000).

In *Buschmann*, the plaintiff entered into a contract to establish a new corporation, transfer assets to it in exchange for stock, and guarantee the corporation's debts to a third-party bank. In exchange, the defendant promised to manage the new corporation, an obligation it allegedly violated by diverting the corporation's assets for its own use. *Id*. at 662. The court held that, "even though the corporate cause of action and Buschmann's cause of action result from the same wrongful acts" ... "Buschmann's cause of action is manifestly personal and not derivative since his liability to pay the corporation's indebtedness to the Bank, which is his principal item of damage, does not arise from his status as a stockholder of the corporation. *Id*. at 662, 663.

Here, the alleged "unjust and unreasonable charges and practices" of AT&T directed towards Calls Plus affects all of its shareholders alike. Intervenors' Complaint in Intervention states that, because "telecommunications is essential to [Calls Plus'] business operation," AT&T's alleged unlawful acts "put the survival of their business at risk . . . [and] threatened to ruin their business." Thus, as a result of the potential loss of the business, Intervenors allege that they have suffered personally.

Intervenors' alleged damage claims of mental anguish and severe stress are not "separate and distinct" from that suffered by any other shareholders. Nor do Intervenors' alleged damages arise from an independent contractual relationship.

Rather, they stem from the potential loss of their pecuniary interest in Calls Plus. Intervenors have two relationships with Calls Plus: that of owners and that of shareholders. A suit praying for damages based on wrongs to the corporation, as in this case, can be brought only as a derivative suit or by the corporation itself. *See Schaffer v. Universal Rundle Corp.*, 397 F.2d 893, 896 (5th Cir.1968) (explaining that a "stockholder's rights are merely derivative and can be asserted only through the corporation"). As such, Intervenors lack standing to sue AT&T and cannot intervene in this action.

Even though the Court has determined that Intervenors lack standing to intervene in this action against Calls Plus, AT&T alternatively asserts that Intervenors' Complaint in Intervention should be dismissed for failure to state a cause of action. While the Court's analysis and determination as to the standing issue remains, the Court will also address AT&T's alternative arguments in its motion under 12(b)(6).

## B. Motion To Dismiss Under Rule 12(b)(6)

### 1. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim for relief that is plausible on its face. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff pleads facts from which the court can "draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly* at 545. The court "must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party."4 "This standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *In re Southern Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir.2008).

### 2. *Whether Intervenors Should Be Permitted To Intervene*

On October 30, 2017, the undersigned allowed Intervenors to intervene in this action under Rule 24(b), permissive intervention, to assert claims of mental anguish and severe stress. AT&T objected to the motion arguing that Intervenors had no statutory right to intervene under the Communications Act and that the motion was untimely and prejudicial to AT&T. *R. 29.* The Court found that Intervenors had failed to assert a statutory right to intervene. Based on the record and under the circumstances, however, the Court held that Intervenors' motion was not untimely. Noting jurisprudence that Rule 24 is to be liberally construed as well as Intervenors' contention that they would suffer substantial prejudice if not allowed to intervene, the Court granted Intervenors' motion. *R. 43.*

Now, in the instant 12(b)(6) motion AT&T argues that Intervenors' claims in

intervention depart from the field of litigation open to the original parties to such an extent that it would seriously complicate and delay determination of the main action. AT&T moves the Court to reconsider and revise its ruling granting Intervenor's permissive intervention under Rule 24(b), based on F.R.C.P. 54(b).[4] Intervenors oppose AT&T's motion as to permissive intervention arguing that "the law-of-the-case" doctrine bars AT&T's argument.

"The law-of-the-case doctrine does not set a trial court's prior rulings in stone, especially if revisiting those rulings will prevent error." *U.S. v. Palmer*, 122 F.3d 215, 220 (5th Cir. 1997). For example, "in civil cases a district court is not precluded by the law-of-the-case doctrine from reconsidering previous rulings on interlocutory orders such as summary judgment motions, as those rulings are not immutable and lack *res judicata* effect." *Id*. (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir.1990)). Thus the law-of-the-case doctrine does not prohibit this Court

---

[4] Federal Rule of Civil Procedure  54(b) states:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

from revisiting its own decision in the same case before the entry of judgment. Fed. R. Civ. P. 54(b). As it is not a final judgment, the Court will reconsider its previous ruling as to permissive intervention.

Under Rule 24(b)(1)(B), the court has discretion to permit intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Here, the underlying action based on diversity jurisdiction involves alleged contractual claims between AT&T and Calls Plus. Intervenors, individually, were not parties to nor have privity of contract with the subject contracts. Intervenors allege AT&T violated the Telecommunications Act by subjecting Calls Plus to "unjust and unreasonable" fees and "unfair and bad faith billing practices" which caused them to incur damages in the form of mental anguish and emotional distress. Based on these allegations, Intervenors claimed to have a permissive right to intervene as private individuals and shareholders of Calls Plus under 47 U.S.C. §§ 201(b), 206 and 207 of the Telecommunications Act.

No common questions of law or fact exist between AT&T's contract suit and Intervenors' tort claim. Based on the personal injury claims for mental anguish and emotional distress, Intervenors will be required to offer testimony from a qualified psychiatrist, physician or other expert to prove that Mr. Gelobter and Mrs. Lamont have suffered mental anguish and emotional distress. Such discovery will necessitate considerable time and preparation and will drastically depart from the issues related to

the contracts in the underlying action between AT&T and Calls Plus.

Because there are no common questions of law or fact between Intervenors' personal tort claims and this breach of contract case between AT&T and Calls Plus, Intervenors' Complaint for permissive intervention under Rule 24 should be denied and the Court's previous order granting the motion to intervene be vacated.

### 3. Whether Intervenors Have A Right To Intervene

In its order on Intervenors' motion to intervene, the Court found that Intervenors failed to establish that they had a statutory right to intervene under Rule 24(a)(1). *R. 43*. Based on the parties' briefs providing additional jurisprudence as to the Communications Act under Rule 24(a)(1), the Court will reconsider its ruling.

#### a. Rule 24(a)(1)

Rule 24(a)(1) of the Federal Rules of Civil Procedure states that "the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute." The Fifth Circuit has held that courts have narrowly construed Rule 24(a)(1) and "have been hesitant to find unconditional statutory rights of convention.... The statutes that do confer an absolute right to intervene generally confer that right upon the United States or a federal regulatory commission; private parties are rarely given an unconditional statutory right to intervene." *Id*. (citing C. Wright & A. Miller, *Federal Practice and Procedure*, Civil § 1906 (1972 & Supp.1984).

The Telecommunications Act does not afford individuals a statutory right to

intervene, and any person alleging damages under the Act must first present sufficient evidence of specific damages flowing from violation of the Act. *See Conboy v. AT&T Corp.*, 241 F.3d 242, 250-251 (2d Cir. 2001) (holding that a private party seeking relief under 47 U.S.C. § 206 must "allege and prove specific damages flowing from violation of the Act, and cannot recover presumed damages"). Section 206 of the Act states, in pertinent part, "[i]n case any common carrier shall do...any act . . . prohibited or declared to be unlawful [by this Act] . . . such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provision of this Act . . . ." 47 U.S.C. § 206. Moreover, Section 207 of the Act provides, "[a]ny person claiming to be damaged by any common carrier subject to the provisions of [the Telecommunication] Act may . . . bring suit for the recovery of damages." 47 U.S.C. § 207.

Intervenors argue they have a right to intervene to recover damages from AT&T based on their own damages resulting from AT&T's alleged violations. Citing *CenturyTel of Chatham, LLC v. Sprint Commc'ns Co.*, 861 F.3d 566 (5th Cir. 2017), Intervenors contend they have a right to intervene because, "a private right of action exists for damages for "any practice in connection with providing communications services that is unjust or unreasonable." *Id.* at 571-572. They further argue that the mental anguish damages alleged in their Complaint in Intervention are distinct from the economic damages alleged by Calls Plus as they are personal damages which were

caused by the alleged damages suffered by Calls Plus.

Intervenors reliance on the language cited in *CenturyTel of Chatham*, however, is misplaced. That case involved a dispute between Sprint Communications Company and various local administrators ("Century Link") in which Sprint alleged it was exempt from exchange access tariff rates charged by Century Link under the Telecommunications Act. Hence, the case did not involve personal damages to third parties, intervenors, or emotional damages as in this case. Rather, the alleged damages were direct damages to Sprint which flowed from the Telecommunications Act.

Based on the plain language of the statute, stated above, the Telecommunications Act does not create a statutory right to intervene. Instead the Act gives the Federal Communications Commission concurrent jurisdiction with the federal district courts to consider claims against common carriers arising under the Act. *See AT&T Corp. v. Coeur d'Alene Tribe,* 283 F3d 1156, 1212 (9th Cir. 2002) (holding, "[b]y its express language, § 207 establishes concurrent jurisdiction in FCC and federal district courts only"); *In re Long Distance Telecommunication Litig*., 612 F.Supp. 892,899 (E.D. Mich. 1985) (reversed in part on other grounds) (holding, "rather than providing substantive rights, [47 U.S.C. § 207] merely outlines the concurrent jurisdiction of FCC and federal district courts to hear claims [] that defendants have violated other provisions of the [Communications] Act").

As previously held by the undersigned, Intervenors cannot intervene in this

action under Rule 24(a)(1) because the plain language of the Telecommunications Act does not create a statutory right to intervene and no case has found otherwise. In addition, the Court finds that Intervenors have not provided sufficient facts showing damages flowing from the Act.

### b. Rule 24(a)(2).[5]

Rule 24(a)(2) provides that intervention is proper when: 1) the motion to intervene is timely; 2) the potential Intervenor asserts an interest that is related to the property or transaction that forms the basis of the controversy; 3) the disposition of that case may impair or impede the potential intervenor's ability to protect his interest; and 4) the existing parties do not adequately represent the potential intervenor's interest. *See* Fed. R. Civ. P. 24(a)(2). The failure to satisfy any one of the four factors is fatal to an intervention. *Staley v. Harris County Tex.*, 160 Fed. App'x 410, 413 (5th Cir. 2005).[6]

A party seeking to intervene as a matter of right under Rule 24(a)(2) must assert an interest in the action that is a "direct, significant, legally protectable" interest in the action. *New Orleans Public Service, Inc. v. United Gas Pipe Line Co.*, 732 F.2d

---

[5] As Intervenors did not originally move to intervene under Rule 24(a)(2), the Court did not consider such in its October 30, 2017 order. *R. 43*.

[6] The Court has previously addressed the timeliness factor in its 24(b) analysis and will therefore address only the remaining factors. *R.43* (finding the Intervention was timely under the Court's discretion and the circumstances).

452 (5th Cir. 1984). In other words, the interest must be one which the substantive law recognizes as belonging to or being owned by the applicant. *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 250(5th Cir. 2009). In this case, Intervenors do not have a direct, substantial, legally protected interest in this matter. First, the underlying Complaint, along with the Counterclaim filed by Calls Plus, involve claims and defenses stemming from contractual telecommunication services provided by AT&T exclusively for Calls Plus. As previously indicated, Calls Plus was the only party in privity of contract with AT&T with respect to the contracts at issue in this case. *R. 1,¶¶5&13*.

Second, invoices for telecommunication services provided by AT&T were addressed and directed only to Calls Plus, a distinct and separate legal entity from Intervenors. In fact, Intervenors concede that their claims are "strictly personal, have no intersection with corporation's property, and otherwise do not form part of the corporation by right or otherwise." *R. 59, pg 6*.

Third, Intervenors wish to interject themselves into this case, not for the purpose of asserting claims related to the contractual services at issue in this case, but rather to assert new, independent tort claims against AT&T for alleged "mental anguish"and severe stress" (strictly personal) relating to telecommunication services provided by AT&T to Calls Plus. *R. 44, ¶30-31*.

Finally, the interests of Intervenors are adequately represented by Calls Plus. As the undersigned previously found, Intervenors have no standing to bring a law suit

18

based on alleged harm to Calls Plus, unless it is by derivative action. Yet, Intervenors have intervened in this action to assert personal injury claims against AT&T that are not recognized by law and that allegedly flow from contracts to which Intervenors are not privy. As such, the only valid claims and defenses that can be raised in this action are adequately represented by Calls Plus.

### 4. Whether Intervenors Fail To State a Plausible Claim For Relief

AT&T argues that Intervenor's claims for damages based on mental anguish and severe stress they allegedly suffered as a result of the injuries sustained by Calls Plus are not permitted under Louisiana Common Law. Intervenors argue that Intervenors' claims for emotional anguish and severe stress are based solely on the Communications Act and Louisiana law does not apply. As provided in AT&T's reply, because damages for mental anguish and severe stress is not provided for in the Communications Act, Louisiana common law determines whether recovery for these damages is available under the Act. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 541 (1994) (holding that common-law principles must be considered when determining the availability of a right to recover under a federal statute for claims of emotional distress, which was not addressed by the Act).

"Louisiana substantive law allows a plaintiff to recover for 'fright, fear, or mental anguish' sustained while an ordeal is in progress, regardless whether the plaintiff is physically injured. Louisiana does not, however, allow recovery for mental

19

anguish occasioned by another's injury or suffering. The sole exceptions to the rule precluding recovery for mental anguish resulting from another's injuries are in cases of wrongful death and cases in which the anguish is in fact caused by the breach of a primary and independent legal or contractual duty which is owed directly to the aggrieved plaintiff."[7] *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 764 F.2d 1084, 1087 (5th Cir.1985).

In this case, the contracts between AT&T and Calls Plus are the basis for AT&T's underlying claims against Calls Plus as well as the counterclaim by Calls Plus against AT&T. Based on these pleadings, the legal or contractual duty allegedly breached by AT&T's unlawful billing practices is owed only to Calls Plus, not to Intervenors. Moreover, Intervenors have failed to plead facts sufficient to show that they incurred the sort of enduring and severe mental harm that would entitle them to mental anguish damages—alleging only that Calls Plus is their "livelihood and their life's work" and that AT&T threatened to ruin their business.[8] *R. 44, ¶ 31*. As the Fifth

_____

[7] (1) Louisiana Civil Code Article 2315.6, provides that mental anguish damages may be recoverable in limited circumstances where the injury or suffering is witnessed by certain close relatives—parents, children and siblings, and the harm is the type that "one can reasonably expect a person ... to suffer serious mental anguish... from the experience"; (2) instances where the claimant's mental anguish is caused by the defendant's breach of a primary and independent legal or contractual duty which is owed directly to the aggrieved plaintiff. anxiety. *LeConte v. Pan American World Airways, Inc.*, 736 F.2d 1019, 1020 (5th Cir. 1984); *Spencer v. Terebelo*, 373 So.2d 200, 202 (La.App. 4th Cir., 1979).

[8] In explaining why economic losses incurred by a third party are not allowed as a matter of policy, the Louisiana Supreme Court has stated, "recovery of mental anguish damages resulting from negligently caused physical injury to another person", "might have been held [to

Circuit has held, an award for mental anguish damages requires "a strong showing of causation."[9] *In re Air Crash  Disaster Near New Orleans*, 764 F.2d 1084, 1087 (5th Cir. 1985).

### 5. Emotional Damages

The remainder of AT&T's motion to dismiss further addresses Intervenors' action for emotional damages:

AT&T also contends that Intervenors' claims for emotional damages do not satisfied the plausibility standard under the Telecommunications Act, because "plaintiffs cannot recover "presumed damages" for emotional distress and mental anguish arising from violations of the Act." *Conboy*, 241 F.3d at 250 - 251 ("a private party seeking relief under Sections 206 and 207 of the Communications Act must allege and prove specific damages flowing from violations of the Act, and cannot recover presumed damages.").  Intervenors argue that their damages are not presumed

---

make the tortfeasor] liable to repair any damages remotely caused by his or her fault." *Trahan v. McManus*, 728 So.2d 1273, 1278 (La.,1999)

[9] In *In re Air Crash Disaster*, the Fifth Circuit quoted *Elston v. Valley Elec. Membership Corp.*, 381 So.2d 554, 556 (La.App. 2 Cir. 1980):

> Due to the highly subjective nature of mental anguish claims and their susceptibility to fabrication or exaggeration, our courts developed these criteria to limit recovery to cases where both the mental injury and the causal relation to the property damage are clearly established. Furthermore we note that the cases in which recovery was denied on the ground that plaintiff was not physically present when the property damage occurred emphasized that absent the circumstance of his presence, the plaintiff could not show that the anguish he suffered was directly caused by the accident.

because they have plead that they have suffered actual damages. As stated in the foregoing, however, Intervenors alleged nothing more than conclusory statements as to the "severe stress" they sustained "as a result of [AT&T's] unlawful and bad faith actions." *R. 44, ¶ 31, 32.*

Finally, AT&T argues that "the economic loss doctrine permits recovery based only on a contractual claim and bars recovery in tort when a party suffers only economic harm unaccompanied by harm to his own person or property." In opposition, Intervenors maintain that they alleged damages of emotional distress under the Communications Act and not Louisiana law, and the economic loss doctrine does not extend to the Communications Act. *R. 59, pp. 8-9.*

Based on the substantial and well-settled jurisprudence upholding the Court's decision that Intervenors' have failed to plea plausible claims for mental anguish suffered as the result of injury to another person, Calls Plus, the Court need not address AT&T's remaining arguments as to Intervenors' failure to state a cause of action under Rule 12(b)(6).   Thus, Intervenors can not recover for mental anguish as a result of the alleged injuries to Calls Plus in this case.

## IV. Conclusion

For the reasons set forth above, the undersigned recommends that the district court grant the Motion To Dismiss, (1) pursuant to Federal Rule of Civil Procedure 12(b)(1) filed by Plaintiff BellSouth Telecommunications, LLC dba AT&T Louisiana

[Rec. Doc. 51] and dismiss Intervenor Plaintiffs' claims without prejudice (2) and/or alternatively pursuant to Federal Rule of Civil Procedure 12(b)(6) and dismiss Intervenor Plaintiffs' claims with prejudice.[10]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.1996).

**THUS DONE AND SIGNED** this 5th day of February, 2018.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[10] In the event the district court grants Plaintiff's motion, the undersigned will vacate its October 30, 2017 order granting Intervenors' motion to intervene. *R. 43.*

23